UDORA DeARMOND, Plaintiff, *v.* HOOVER BALL AND BEARING, UNILOY DIVISION, Defendant and Third-Party Plaintiff-Appellant.— (ABSOPURE/PLASTIPAK DIVISION OF BEATRICE FOODS CO., Third-Party Defendant-Appellee.)—UDORA DeARMOND, Plaintiff-Appellant, *v.* HOOVER BALL AND BEARING, UNILOY DIVISION, Defendant-Appellee.

Fourth District    Nos. 15770, 16135 cons.

Opinion filed August 4, 1980.

T. G. Knappenberger, Jr., of Champaign, for appellant Hoover Ball and Bearing, Uniloy Division.

Marc J. Ansel, of Zimmerly, Dodd, Ansel, Stout & Cole, P. C., of Champaign, for appellant Udora DeArmond.

Hayes & Moore, of Champaign, for appellee Absopure/Plastipak Division of Beatrice Foods Co.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

Plaintiff, Udora DeArmond, injured her left hand while working on a machine (which molded and trimmed plastic bottles) manufactured by Hoover Ball and Bearing, Uniloy Division (Manufacturer). Plaintiff filed a two-count complaint against the Manufacturer. Count I alleged that the Manufacturer was strictly liable for the plaintiff's injury. Count II alleged that the Manufacturer's negligence caused the plaintiff's injury. Manufacturer, by a third-party complaint, sued Absopure/Plastipak Division of Beatrice Foods (Employer), the plaintiff's employer at the time the plaintiff was injured. The Manufacturer asked for indemnification from Employer alleging that the plaintiff's injury was caused solely by Employer's conduct.

The trial court granted the Employer's motion to strike and dismiss the Manufacturer's third-party complaint and entered judgment. The trial court also made a Supreme Court Rule 304 finding (73 Ill. 2d R. 304). In cause No. 15770, Manufacturer, as third-party plaintiff, appeals the above order.

The trial court entered judgment granting the Manufacturer's motion for summary judgment against the plaintiff. In cause No. 16135, plaintiff

appeals the trial court's order granting summary judgment in favor of the Manufacturer. We have consolidated these causes for this appeal.

We affirm the order for summary judgment in favor of the Manufacturer and against the plaintiff. Manufacturer's appeal from the trial court order dismissing its third-party complaint against the Employer is thus moot, and need not be discussed.

Manufacturer's motion for summary judgment stated that the evidence deposition of John Knueve establishes that it was the Employer's conduct which caused the plaintiff's injury, and, therefore, the Manufacturer is not liable as a matter of law. Knueve's deposition established: He is employed by the Employer but not now at the Champaign plant where the accident occurred. However, when the plaintiff was injured, he was employed there. He was the plant manager. His duties were to oversee the overall operation of the plant.

He was aware that plaintiff was involved in an accident on September 10, 1976. He did not see the occurrence, but was told of the incident. He said that the trimmer was in operation, and that the bottles jammed inside the trimmer. The plaintiff reached into the machine to unjam the trimmer, or to pull one of the jammed bottles out of the trimmer. The trimmer started up and her hand was injured.

Knueve stated that he was in the Employer's employment when the subject trimmer was delivered to the plant. He observed the trimmer being uncrated. The Employer's employees set up the machine. At the time that the machine was set up (and when it was started in operation) it had a complete set of clear plastic guards or safety doors installed on it. However, at the time of the injury, the safety doors were not on the machine. The safety doors had been removed to allow easier access to the bottles that frequently jammed inside the machine. Knueve said that he, or one of his own men, may have taken off the safety doors. He stated that no one from the Manufacturer knew that the doors had been removed, and that the doors were replaced shortly after the accident happened. He testified that the Manufacturer did not in any way whatsoever have anything to do with the removal of the doors.

Knueve testified that if the guard doors had been on the machine, Udora DeArmond, plaintiff, would not have been injured. He went on to say that there were warning signs on the doors and that they were equipped with a safety shutoff switch that automatically stopped the machine when the doors were lifted.

On cross-examination he was asked: "How was it held on, or fastened in position?" He responded, "A rod—like about a half-inch rod went through there, and then there were about eight quarter-inch bolts that bolt this piece of plastic right to this rod. Of course, then it could hinge up, and down." The door was removed by taking off the quarter-inch bolts and

then taking the rod out. The quarter-inch bolts were threaded screws. They were removed with a 7/16 wrench. He said that the doors were easily removed. Knueve went on to state that he knew that the door guarded a pinch-point, and that he had not studied the regulations under the Federal Occupation Safety and Health Act (OSHA) with regard to guarding pinch-points.

When the guard door was removed, Knueve or one of his employees circumvented the protective micro-switch by wrapping the switch with a piece of tape. Normally to unjam the trimmer, someone would have had to raise the plastic guard door, which would be hinged, and then reach in. When the door was open the machine would automatically shut off. The machine would not automatically restart. It had to be restarted manually with the door closed. He stated that his action in removing the safety doors was not consistent with company policy and that it was a deliberate act on his part. Also attached to the Manufacturer's motion for summary judgment against the plaintiff was an affidavit by Calvin Mitchell, an employee of the Manufacturer, which, in part, corroborated Knueve's evidence deposition.

■■ The plaintiff in opposition to the Manufacturer's motion for summary judgment stated that the machine was owned by the Manufacturer, and only leased to Employer. It is argued that the Manufacturer "ought not be permitted to raise the intervening conduct of the Plaintiff's employer as a totally superseding cause of the injury" because of certain provisions of the lease. The plaintiff did not orally argue this issue, and in her brief she does not cite any authorities supporting her proposition that the lease should somehow prevent the Manufacturer from raising the conduct of the plaintiff's Employer. We find that it does not.

The objections to the motion for summary judgment further set out the OSHA statute referred to in Knueve's deposition. The referred-to OSHA statute (29 C.F.R. 1910.217(b)(14)(c)(2) (1979)) reads:

"(2) *Point of Operation guards.* (i) Every point of operation guard should meet the following design, construction, application, and adjustment requirements:

(a) It shall prevent entry of hands or fingers into the point of operation by reaching through, over, under or around the guard;

* * *

(d) It shall utilize fasteners not readily removable by operator, so as to minimize the possibility of misuse or removal of essential parts;

* * *

(iv) An interlocked press barrier guard shall be attached to the press frame or bolster and shall be interlocked with the press clutch control so that the clutch cannot be activated unless the

guard itself, or the hinged or movable sections of the guard are in position to conform to the requirements of Table 0-10.

* * *

(vi) The adjustable barrier guard shall be securely attached to the press bed, bolster plate, or die shoe, and shall be adjusted and operated in conformity with Table 0-10 and the requirements of this subparagraph. Adjustments shall be made only by authorized personnel whose qualifications include a knowledge of the provisions of Table 0-10 and this subparagraph."

Plaintiff contends that it was apparent from the deposition of Knueve and from the OSHA requirements that a question of fact existed as to whether, in light of the easy removability of the safety doors, such removal was reasonably foreseeable by the Manufacturer. Attached to the plaintiff's objections was an affidavit by George Harper, an expert in safety engineering. Harper stated that he had examined the machine, including the barrier guard and its attachment at the pinch-point. As a result of this and his professional knowledge of pinch-point guarding and standards relevant thereto, he was "of the opinion that the interlock barrier guard at the pinch-point of the trimmer was inadequately attached and that its removal was reasonably foreseeable by the manufacturer, so that the product was unreasonably defective in design and construction at the time it left the control of the named defendant."

The trial court concluded that there was no genuine issue as to any material fact, and held, as a matter of law, that the removal of adequate safety devices was not reasonably foreseeable by the Manufacturer. The Employer's removal of the safety doors rendered the machine unreasonably dangerous. The Employer's action was found to be a totally superseding cause of the plaintiff's injury.

■■ Illinois cases clearly state that in order for a party to recover from a manufacturer based upon the theory of strict liability in tort, he must prove that his injuries resulted from a condition of the product, that the condition was an unreasonably dangerous one, and that the condition existed at the time that the product left the manufacturer's control. The unreasonably dangerous condition of a product may result from a design defect. (*Gasdiel v. Federal Press Co.* (1979), 78 Ill. App. 3d 222, 396 N.E.2d 1241.) "It is the rule that where other causes combine to produce injury, the causal connection between the defective product and the injury will be broken only if the acts or omissions of others were improbable or unforeseeable." *Doran v. Pullman Standard Car Manufacturing Co.* (1977), 45 Ill. App. 3d 981, 987, 360 N.E.2d 440, 445, citing *Lewis v. Stran Steel Corp.* (1974), 57 Ill. 2d 94, 311 N.E.2d 128.

Therefore, in order to have avoided a summary judgment, the plaintiff would have had to establish that there was a question of fact as to

whether the machine's design was an unreasonably dangerous condition which caused or contributed to the plaintiff's injury, and that a question of fact existed as to whether it was foreseeable or probable that the Employer would remove the safety doors on the machine.

■■ The plaintiff concedes that "[t]he facts show that the machine in question was manufactured with interlock barrier guards which were removed by the Plaintiff's employer without the knowledge of the Defendant—manufacturer." Nevertheless, the plaintiff argues that the machine was unreasonably dangerous when it left the Manufacturer's control because the safety doors were easily removable and that such removal was foreseeable. Thus, if the doors were not easily removable the machine would not have been unreasonably dangerous because of its design.

In the context of this case, it does not follow that the machine was unreasonably dangerous simply because the safety doors were easily removable. See *Flores v. U.S. Industries, Inc.* (1980), 81 Ill. App. 3d 944, 401 N.E.2d 979.

Further, given the facts of this case which show that the safety doors were removed by taking off eight quarter-inch bolts and a rod, the doors were *not* easily removable—at least not to the degree to make this machine unreasonably dangerous. As the OSHA standards the plaintiff set out indicate, the potential for danger arises when the safety doors on the machine are readily removable *by the operator*. Here, the machine operator, the plaintiff, did not remove the safety doors. Moreover, it is not indicated that these safety doors were readily removable by the plaintiff, or any other machine operator.

This record does not suggest a fact question as to the foreseeability of the removal. Although foreseeability is usually a jury question, it may be decided as a matter of law where the facts demonstrate that the plaintiff could never be entitled to recovery. *Doran v. Pullman Standard Car Manufacturing Co.* (1977), 45 Ill. App. 3d 981, 987, 360 N.E.2d 440, 445, citing *Winnett v. Winnett* (1974), 57 Ill. 2d 7, 310 N.E.2d 1.

The summary judgment entered by the trial court was correct and is affirmed. The appeal from the order dismissing the third-party complaint is dismissed as moot.

Cause No. 16135 is affirmed.

Cause No. 15770 is dismissed as moot.

MILLS, P. J., and WEBBER, J., concur.