RAYMOND E. AUGENSTINE, Plaintiff-Appellant, v. DICO COMPANY, INC., *et al.*, Defendants-Appellees (Commonwealth Edison Company *et al.*, Defendants).

First District (3rd Division)   No. 83—2753

Opinion filed July 17, 1985.

274

Michael W. Rathsack, of Chicago (William R. Galliani, of counsel), for appellant.

Bullaro & Carton, Chartered, of Chicago (John J. Bullaro, Jr., and Thomas A. Carton, of counsel), for appellee Dico Company, Inc.

PRESIDING JUSTICE WHITE delivered the opinion of the court:

Plaintiff Raymond Augenstine (Augenstine) brought this action in strict products liability and negligence to recover damages for injuries caused by an unreasonably dangerous truck/crane manufactured by Dico Company, Inc. (Dico), and sold by Midwest Contractors Equipment, Inc. (Midwest). He appeals from the summary judgment entered in favor of defendants Dico and Midwest.

At the time of the accident Augenstine had been employed for seven years as a truck driver by Seberger Construction Company. His duties involved operating a truck with a boom-type crane mounted on the rear for loading and unloading construction material. The record shows that on June 15, 1979, Augenstine drove to a house in Calumet City to deliver a load of sand. At that time, he was aware that there were power lines in the area. Later that day, he drove back to the house through an alley to deliver cement blocks. He inspected the area surrounding the house for electrical wires to determine where to position the truck/crane and to make sure he could swing the boom without coming in close proximity to the wires. In his deposition, Augenstine stated that he was aware from prior experience that trees and shrubbery can camouflage wires in an area, yet he made no specific effort to check for camouflaged wires at the scene of the accident. After his inspection, plaintiff used a remote control unit with a conductive cable to move the boom of the crane through branches of trees. He received an electrical shock when the boom hit a wire concealed in the trees. He sustained numerous injuries, including the loss of his leg.

The record shows that in 1979, Dico manufactured and marketed both conductive and nonconductive remote control cables. The conductive cable conducts electricity, thus exposing the operator to the risk of electrical shock when contact is made with electrical power lines. The nonconductive remote control unit, which does not conduct electricity, was introduced to the market in 1977 to protect against electrical accidents. This cable was available as standard equipment on new machines and as a replacement for conductive cables on machinery already in the field.

Midwest sold the truck/crane unit involved in the incident to Seberger, equipped with a nonconductive remote control cable. Prior to

the accident, Seberger replaced the nonconductive remote control unit with Dico's conductive unit. Augenstine was aware that the truck had been modified and that there was no electrical insulation in the cable.

Augenstine alleged in his amended complaint that the crane as modified was in a defective and unreasonably dangerous condition in one or more of the following respects:

(a) Said hoist (of the crane) was not equipped with a remote control unit with a nylon cable to insulate a hoist operator from injury resulting from an energized hoist, control box or load caused by the boom's contact or close proximity with high voltage power lines.

(b) Said hoist was not equipped with an insulating link between the hoist fork and trolly cable to insulate a hoist operator from injury caused by an energized hoist, control box, and load.

(c) Said hoist was not equipped with a nylon stick for use in guiding the hoist fork and lift to insulate a hoist operator from injury caused by an energized hoist or load.

(d) Said hoist was not designed with adequate safeguards to insulate a hoist operator from an energized hoist, load, or control box.

The trial court granted Dico's and Midwest's motion for summary judgment. This appeal followed.

On appeal, Augenstine contends that the record presents genuine issues of material facts as to whether defendants' crane with the conductive, uninsulated remote control cable was in a dangerous and defective condition, thus precluding an award of summary judgment in favor of Dico and Midwest. On the other hand, defendants argue that there was no jury question and that they cannot be held liable as a matter of law because the substitution of the conductive unit for the nonconductive one was an intervening, material change in the condition of the crane and which in fact was the proximate cause of plaintiff's injury.

■■ To recover against a manufacturer under strict liability, a plaintiff must prove that his injury resulted from an unreasonably dangerous condition of the product and that the condition existed at the time the product left the manufacturer's control. *Dunham v. Vaughan & Bushnell Manufacturing Co.* (1969), 42 Ill. 2d 339, 247 N.E.2d 401; *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182; *Gasdiel v. Federal Press Co.* (1979), 78 Ill. App. 3d 222, 396 N.E.2d 1241.

Illinois has adopted the doctrine of strict liability set forth in section 402A of the Restatement (Second) of Torts. (*Coleman v. Verson Allsteel Press Co.* (1978), 64 Ill. App. 3d 974, 382 N.E.2d 36; Restate-

ment (Second) of Torts sec. 402A (1965).) Section 402A(b) imposes strict liability only where the defective product reaches "the user or consumer without substantial change in the condition in which it is sold." (Restatement (Second) of Torts sec. 402A(b) (1965).) Where the intervention of a third party's defective alteration of the product is itself unreasonably dangerous and causes the injury, the original manufacturer is not liable. *Coleman v. Verson Allsteel Press Co.* (1978), 64 Ill. App. 3d 974.

■ It is undisputed that as originally designed, manufactured and sold by Dico and Midwest, the crane was equipped with a nonconductive remote control unit to insulate operators from electrical shock. As modified, the crane had a conductive remote control cable which consisted of a standard copper wire and had no insulation to protect the operator from electrical shock in the event the boom came in contact with overhead electrical wires.

Augenstine stated in his deposition that a remote control unit with a conductive cable cannot be plugged into a nonconductive cable control receptacle. To attach a conductive cable, the nonconductive receptacle must be removed and replaced with a conductive cable receptacle. The control device of the nonconductive cable, which is powered by a nine volt consistor battery, sends light impulses through the fiber optic cord which are picked up by the receiver, thereby energizing the machine. The conductive cable contains standard copper wires which transmit electricity that energizes the crane. The control box on the two cables are also different: the control box on the nonconductive unit is plastic, whereas the conductive control box is metal.

We believe that, within the meaning of section 402A(b), the substitution of a significantly different remote control mechanism was a substantial change in the condition of the crane as sold by Dico and Midwest, thus absolving both of liability. *Gasdiel v. Federal Press Co.* (1979), 78 Ill. App. 3d 222; *Coleman v. Verson Allsteel Press Co.* (1978), 64 Ill. App. 3d 974.

In *Gasdiel*, plaintiff slipped on the floor and accidentally activated a foot pedal on a punch press and was injured when her hand became trapped in the press. As originally designed the machine could not be accidentally activated, because it would not run unless someone was standing in the operator's position. Plaintiff's employer attached a substitute pedal which could be moved into the path of bystanders and activated although no one was in the operator position. The court applied section 402A(b) and determined that "the substitution of a significantly different starting mechanism was a substantial change in the condition of the punch press as sold by Federal and Four States."

(*Gasdiel v. Federal Press Co.* (1979), 78 Ill. App. 3d 222, 227.) The court therefore concluded that there was no causal connection between plaintiff's injuries and the condition of the machine as originally manufactured. (*Gasdiel v. Federal Press Co.* (1979), 78 Ill. App. 3d 222, 228; *Coleman v. Verson Allsteel Press Co.* (1978), 64 Ill. App. 3d 974, 979.) Similarly, we hold here that there is no causal connection between plaintiff's electrically caused injuries and the condition of the truck/crane as originally manufactured, equipped with a nonconductive remote control.

Defendant's motion for summary judgment was properly supported by a statement that the vehicle was equipped, when sold, with a nonconductive remote control which functioned as a safety device specifically designed to prevent the risk of electrical shock to the operator. Plaintiff produced nothing to indicate the existence of facts causally connecting his injuries with the product as originally manufactured. As stated in *Coleman*:

> "It was plaintiff's responsibility, on defendant's motion for summary judgment, to bring forth all facts and evidence that he believed would satisfy his burden of proving the existence of an unreasonably dangerous condition *which existed at the time the product left defendant's control and which proximately caused the injury.*" (Emphasis added.) *Coleman v. Verson Allsteel Press Co.* (1978), 64 Ill. App. 3d 974, 979.

Plaintiff further contends that the controlling factor in this case is that the substituted conductive cable was also manufactured by Dico. He therefore asserts that defendants could have reasonably foreseen that the purchaser would use the two remote controls interchangeably, because Dico kept both units on the market simultaneously.

■ Foreseeability has been defined by the Illinois Supreme Court as that which is objectively reasonable to expect, not merely what might conceivably occur. *Winnett v. Winnett* (1974), 57 Ill. 2d 7, 12, 310 N.E.2d 1; *Mata v. Clark Equipment Co.* (1978), 58 Ill. App. 3d 418, 374 N.E.2d 763.

■ The record shows that Dico marketed the nonconductive cord as a safety device specifically designed to be used where there was a risk of contact with overhead electrical wires. When Dico introduced the nonconductive cord to the market, it mailed literature directly to its customers, encouraging them to buy either the new cranes equipped with the nonconductive cords or to buy retrofit nonconductive cords for older machines already in the market. Dico encouraged its customers to take away the conductive cords. However, Dico continued to market the conductive unit because it is completely safe to

use in areas where there are no electrical power lines. Moreover, an advantage of the conductive unit is that, unlike the nonconductive unit, it needs no batteries and the operator need not carry a supply of extra batteries to replace depleted ones. In addition, Dico provided nonconductive replacements for exchange if a purchaser had problems with the new units and requested a replacement.

Under these circumstances, we are of the opinion that Dico's marketing of the conductive and nonconductive units simultaneously created no duty to foresee that Augenstine's employer would replace the safer nonconductive unit with a conductive one and that Augenstine would use it in close proximity to overhead electrical wires. "The liability of a manufacturer properly encompasses only those situations where the product is being used for the purpose for which it was intended or for which it is reasonably foreseeable that it may be used." (*Mata v. Clark Equipment Co.* (1978), 58 Ill. App. 3d 418, 422, citing *Winnett v. Winnett* (1974), 57 Ill. 2d 7, 11.) Accordingly, the trial court did not abuse its discretion in finding as a matter of law that the modification was not foreseeable to defendants. Foreseeability may be decided as a matter of law where the facts demonstrate that plaintiff could never be entitled to recovery. *Winnett v. Winnett* (1974), 57 Ill. 2d 7, 13; *Gasdiel v. Federal Press Co.* (1979), 78 Ill. App. 3d 222, 229; *Mata v. Clark Equipment Co.* (1978), 58 Ill. App. 3d 418, 422.

■ The trial court correctly entered summary judgment for defendants Dico and Midwest. The substitution of Dico's conductive remote control for its nonconductive remote control constituted a substantial change in the condition of the truck/crane beyond defendants' control, thus absolving both of liability. (Restatement (Second) of Torts sec. 402A (1965).) The substitution of the conductive unit for use in areas where it is dangerous was a misuse which defendants could not have reasonably foreseen. (*Mata v. Clark Equipment Co.* (1978), 58 Ill. App. 3d 418, 422.) Accordingly, there was no issue of material fact, and defendants were entitled to judgment as a matter of law.

The summary judgment of the circuit court of Cook County in favor of defendants is affirmed.

Affirmed.

McNAMARA and McGILLICUDDY, JJ., concur.