VERA DAVIS, Special Adm'r of the Estate of Calvin Davis, Deceased, Plaintiff-Appellant, v. PAK-MOR MANUFACTURING COMPANY *et al.*, Defendants-Appellees (Zoeller Waste Systems *et al.*, Defendants).

First District (4th Division)   No. 1—95—2394

Opinion filed September 30, 1996.

CAHILL, J., dissenting.

Corboy & Demetrio, P.C., of Chicago (Philip H. Corboy and Kevin G. Burke, of counsel), for appellant.

Landau, Omahana & Kopka, Ltd., of Chicago (Byron L. Landau, Jeffrey S. Herden, and Andrew D. Ellbogen, of counsel), for appellee Pak-Mor Manufacturing Company.

Kiesler & Berman, of Chicago (Stephen B. Frew, John J. Piegore, and Donna D. Ciancio, of counsel), for appellee Daniel Krall & Co.

Michael W. Rathsack, of Chicago, for appellee Navistar International Transportation Corporation.

JUSTICE THEIS delivered the opinion of the court:

The plaintiff, Vera Davis, brought this wrongful death action on behalf of her husband, Calvin Davis, based on a strict product liability theory. On May 31, 1991, Calvin, a garbage collector for the Village of Skokie, had been operating a garbage-packing device located at the rear of his truck, when the truck began to move. As Calvin ran to the front of the truck and attempted to enter the cab, he fell. The truck ran over him, causing fatal injuries. Following the accident, the plaintiff brought an action against several defendants, including (1) Navistar International Transportation Corporation (Navistar), the manufacturer of the truck's cab and chassis, (2) Pak-Mor Manufacturing Company (Pak-Mor), the manufacturer of the packing device that was added to the chassis to transform it into a garbage truck, and (3) Daniel Krall & Co., Inc. (Krall), the company that sold the packing device to the Village of Skokie and installed it onto the chassis. The plaintiff maintained that the garbage truck, including its packing control switch, constituted an unreasonably dangerous product. It was undisputed that the switch wiring of the truck had been altered to permit the operation of the packing device with the truck in gear. The plaintiff argued that the defendants had a duty to guard against the alteration of the switch wiring. Pak-Mor and Krall filed motions for summary judgment, arguing that they could not have foreseen the alteration of the switch wiring. Navistar also filed a motion for summary judgment on the grounds that the alleged dangerous condition involved systems incorporated onto the cab and chassis after they left Navistar's control. The trial court granted summary judgment in favor of all three defendants. The plaintiff now appeals. Upon review, we conclude that a genuine issue of material fact exists as to whether a garbage truck operator easily could alter the truck's switch wiring and whether an incentive to alter the switch exists within the garbage collection industry. For the reasons that follow, we affirm summary judgment in favor of Navistar and reverse the trial court's judgment as to Pak-Mor and Krall.

On appeal, several facts are undisputed. The cab and chassis supplied by Navistar had a neutral safety switch, which was designed to prevent the truck's engine from being started with the transmission in gear. The packer body supplied by Pak-Mor contained a packer control switch that Krall installed on the chassis by wiring it to the neutral safety switch. If properly wired, the garbage-packing device is operable only if the transmission is in neutral. Ideally, a garbage

truck operator should place the truck in neutral and set the parking brake before exiting the cab to collect and pack garbage.

In this case, a post-accident inspection of the truck revealed that the wires connecting the packer control switch to the neutral safety switch had been altered to permit the operation of the packing device with the truck in gear. The record contains a diagram showing the manner in which the packer control switch was rewired to bypass the safety feature. The diagram shows that the switch consisted of six wires attached to six terminals. Whoever altered the switch merely moved a wire from one terminal to another. Thus far, the identity of the individual who altered the wiring is unknown. The parties do not dispute that the truck was wired properly when it left the defendants' control.

Pak-Mor and Krall moved for summary judgment on the grounds that they had no duty to construct a foolproof garbage truck to prevent the alteration of the packing device after it left their control. In response, the plaintiff contended that the miswiring of the packing control switch was reasonably foreseeable. In support of her argument, the plaintiff offered the affidavit of Daniel Pacheco, an expert in engineering. Pacheco's affidavit stated that, in the waste disposal industry, truck operators have an incentive to alter the wiring of the neutral start switch/control switch to allow for "[p]acking on the run." This procedure enables the truck operators to pack garbage while the truck is in gear, resulting in faster completion of their work. Pacheco stated that engineers in the industry were aware of this phenomenon and devised the neutral start switch in order to prevent packing on the run.

Pacheco further indicated that the switch in question failed to meet industry standards because it easily could be overcome by simple rewiring. Pacheco concluded that the truck design presented an unreasonably dangerous condition "in that it failed to incorporate an electrical system design that could not be readily overridden to allow the operation of the PAK-MOR packer while the vehicle was in gear." Moreover, Pacheco concluded that the improper wiring could have been prevented if permanently wired connectors had been used in the truck.

In ruling on the motion for summary judgment, the trial court found Pacheco's affidavit insufficient because it did not state expressly that the modification of the switch can be accomplished by someone who does not possess special, expert knowledge. The trial court

determined that there was no evidence that the modification of the wiring easily could have been accomplished by a garbage truck operator. The court concluded that Krall and Pak-Mor could not have foreseen that the safety switch would have been altered and granted the motion for summary judgment. Likewise, the court granted Navistar's motion for summary judgment.

■ Initially, we address Navistar's status on appeal. Based on the record and briefs before us, we determine that the plaintiff has waived appellate review of summary judgment as to Navistar. Supreme Court Rule 341(e) requires an appellant to advance specific contentions, supported by a discussion of the relevant facts and law. 155 Ill. 2d R. 341(e). In her briefs, the plaintiff merely makes passing reference to Navistar. Therefore, she has waived review of the trial court's ruling.

Nonetheless, the plaintiff cannot show that Navistar had a duty to anticipate that the chassis could become unreasonably dangerous after it left Navistar's control. See *Depre v. Power Climber, Inc.*, 263 Ill. App. 3d 116, 635 N.E.2d 542 (1994). The record shows that Navistar only knew that its chassis could serve any number of uses. When the chassis left Navistar's control, the packer control switch had not yet been attached. At oral argument, the plaintiff conceded that there was no evidence that Navistar knew that the chassis would be used as a part of a garbage truck. Therefore, we affirm the trial court's order granting summary judgment in favor of Navistar.

■ We next consider the trial court's decision to grant summary judgment in favor of Pak-Mor and Krall. Before reaching the merits of this issue, we take the opportunity to clarify a matter in the record. The plaintiff's notice of appeal, dated July 7, 1995, states that she appeals from the trial court's June 12, 1995, order. The June 12 order granted Navistar's motion for summary judgment and included finality language with respect to an order dated May 31, 1995. Based on the record before us, we determine that the notice of appeal specifying the June 12 order necessarily entails an appeal from the May 31 order. We note that the May 31 order (1) denied the plaintiff's motion for reconsideration, (2) granted Pak-Mor's and Krall's amended motion for summary judgment, and (3) continued the case for a hearing on Navistar's motion for summary judgment. In her motion for reconsideration, the plaintiff asked the court to reconsider its earlier summary judgment ruling in light of the amended expert affidavit of Daniel Pacheco. On appeal, the defendants argue the

inferences that may or may not be drawn from Pacheco's affidavit. Also, the defendants filed an "Amended Motion for Summary Judgment," which expressly addresses the assertions contained in the amended expert affidavit. In ruling on the so-called "Motion for Reconsideration," the trial court considered the affidavit. Therefore, based on the record and arguments of the parties on appeal, we determine that the amended expert affidavit of Daniel Pacheco is properly before us and that we may review it *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 607 N.E.2d 1204 (1992).

Turning to the plaintiff's contentions, she first argues that a genuine issue of material fact remains regarding the ease with which a garbage truck operator could alter the switch wiring on the truck, thereby rendering it an unreasonably dangerous product. The plaintiff directs us to review the expert affidavit of Daniel Pacheco. She argues that the defendants knew or should have known that, at the time of the decedent's injury, truck operators had an incentive to alter a garbage truck's switch wiring. She also argues that this incentive was recognized in the garbage collection industry.

In response, Pak-Mor and Krall argue that the modification of the neutral safety switch was not reasonably foreseeable as a matter of law. At oral argument, they contended that the modification requires expertise not possessed by an average garbage truck operator. The defendants maintain that a garbage truck operator would be incapable of altering the neutral safety switch to allow the packer body to function with the transmission in gear. They further argue that the only reasonable inference from the affidavit of Daniel Pacheco is that the modification of the switch may be accomplished by someone with specialized knowledge of electronics. As such, they urge us to affirm the trial court.

■ We review the trial court's decision to grant summary judgment, as well as all of the evidence contained in the record, *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 607 N.E.2d 1204 (1992). We must review the affidavits, depositions, admissions, exhibits and pleadings on file, construing them strictly against the movants, Pak-Mor and Krall, and liberally in favor of the nonmoving plaintiff. *Outboard*, 154 Ill. 2d at 131-32, 607 N.E.2d at 1223.

Summary judgment is proper when there is no genuine issue of material fact and the moving party's right to judgment is free from doubt. *In re Estate of Albergo*, 275 Ill. App. 3d 439, 656 N.E.2d 97

(1995). Because summary judgment is a drastic measure (*Purtill v. Hess*, 111 Ill. 2d 229, 489 N.E.2d 867 (1986)), where reasonable persons could draw different inferences from the undisputed facts, summary judgment should be denied. *Albergo*, 275 Ill. App. 3d at 445, 656 N.E.2d at 103.

■ Where an unreasonably dangerous condition is caused by a modification to the product after it leaves the manufacturer's control, the manufacturer is not liable unless the modification was reasonably foreseeable. *Woods v. Graham Engineering Corp.*, 183 Ill. App. 3d 337, 341, 539 N.E.2d 316, 318 (1989); see generally *Palmer v. Avco Distributing Corp.*, 82 Ill. 2d 211, 412 N.E.2d 959 (1980). Foreseeability means "that which it is *objectively reasonable* to expect, not merely what might conceivably occur." (Emphasis in original.) *Winnett v. Winnett*, 57 Ill. 2d 7, 12-13, 310 N.E.2d 1, 5 (1974).

If a product is capable of easily being modified by its operator, and if the operator has a known incentive to effect the modification, then it is objectively reasonable for a manufacturer to anticipate the modification. See *Spurgeon v. Julius Blum, Inc.*, 816 F. Supp. 1317 (C.D. Ill. 1993); *Wiedemann v. Industrial Erectors, Inc.*, 137 Ill. App. 3d 47, 483 N.E.2d 990 (1985). Conversely, if the alteration of the product requires special expertise, or otherwise is not accomplished easily, then it is not objectively reasonable for a defendant to foresee the modification. *Woods*, 183 Ill. App. 3d at 342, 539 N.E.2d at 319; *DeArmond v. Hoover Ball & Bearing, Uniloy Division*, 86 Ill. App. 3d 1066, 408 N.E.2d 771 (1980).

In support of their argument that the alteration of the switch wiring in this case was not reasonably foreseeable, the defendants rely on several cases where the court determined that the manufacturer could not reasonably foresee the physical alteration of the product. See *Woods*, 183 Ill. App. 3d at 341, 539 N.E.2d at 318-19; *Augenstine v. Dico Co.*, 135 Ill. App. 3d 273, 481 N.E.2d 1225 (1985); *Gasdiel v. Federal Press Co.*, 78 Ill. App. 3d 222, 396 N.E.2d 1241 (1979); *Coleman v. Verson Allsteel Press Co.*, 64 Ill. App. 3d 974, 382 N.E.2d 36 (1978). The facts in the foregoing cases differ materially from the facts presented here. In each of these cases, the evidence showed that the modifications only could be accomplished with technical expertise, beyond that possessed by the average machine operator. In each case, the court determined that substantial changes had been made to the products in question. Additionally, nothing in the cases suggests that the plaintiff presented evidence of the ease with which the product could be altered, or the incentive to do so.

■ In contrast, in the present case, the plaintiff has offered the affidavit of her engineering expert, Daniel Pacheco. Because we are required to construe all reasonable inferences in Pacheco's affidavit in the light most favorable to the plaintiff, we find that a genuine issue of material fact remains. Specifically, there is an issue of material fact as to whether the defendants could foresee that a garbage truck operator easily could rewire the packing control switch in order to pack on the run. The defendants failed to present evidence that the rewiring of the switch is a complex procedure or that an average garbage truck operator would not have the knowledge necessary to accomplish the modification. The affidavit of Pacheco invites an inference that the alteration of a garbage truck's switch wiring may be effected with ease, in less than five minutes, using pliers and a screwdriver.

Furthermore, the plaintiff's expert affidavit suggests that truck operators have an incentive to alter their trucks in a manner that permits them to dispose of garbage in a more efficient manner, by operating the packing device while the truck is in gear. This fact is supported by the deposition testimony of Paul Brzozowski, an employee for the Village of Skokie. Brzozowski confirmed the existence of the industry-wide phenomena known as packing on the run. Thus, we find that the plaintiff has presented evidence sufficient to show that a question exists as to whether garbage truck operators have an incentive to alter the packing control switch in order to complete their work more quickly. Upon reviewing the record and the arguments of the parties on appeal, we conclude that the trial court prematurely granted summary judgment in favor of Pak-Mor and Krall. We affirm the trial court's judgment as to Navistar, and reverse and remand this case for further proceedings as to Pak-Mor and Krall.

Affirmed in part; reversed and remanded in part.

HOFFMAN, P.J., concurs.

JUSTICE CAHILL, dissenting:
I respectfully dissent. The majority writes: "The defendants failed to present evidence that the rewiring of the switch is a complex procedure or that an average garbage truck operator would not have the knowledge necessary to accomplish the modification." 284 Ill. App. 3d at 221. Here from the record is a drawing of the circuitry that prevented the defendant's product from working unless the truck to which it was attached was in neutral gear:

A3

The record also includes the same drawing with penciled nota-
tions in an unknown hand. That drawing was in the possession of the
Village of Skokie. The evidence established that the penciled nota-
tions, if followed, would enable one so disposed to alter the circuitry
to bypass the safety feature of the product. The record is silent on
who rewired the device and devoid of evidence that could create an

inference that it was the act of the deceased operator. Only speculation remains, and the possibility that the rewiring was the act of an industrial saboteur is as rational a fancy as a sanitation worker with a degree in electrical engineering.

As the trial court pointed out, the affidavit of the plaintiff's expert established nothing more than that the wiring represented by the drawing was easily accessible within the cab of the truck and that the affiant, familiar with electrical wiring, could do the deed in five minutes. It says nothing about the skill or expertise required once access takes place. We here twist the rule that a manufacturer is not absolved of liability if he can reasonably foresee that his product can be easily modified by the operator to defeat a safety feature, and make a jury question of whether or not the average sanitation worker can decipher a wiring diagram for an electronic device. Reasonably foreseeable means that which is objectively reasonable to expect, not that which might conceivably occur. *Winnett v. Winnett*, 57 Ill. 2d 7, 13, 310 N.E.2d 1 (1974).

The trial court ruling got to the nub of this case: an affidavit of an expert that he could decipher the wiring diagram and easily modify the device is irrelevant when the test is whether or not the device is easily modified by the operator. That is my understanding of the law in Illinois. *DeArmond v. Hoover Ball & Bearing, Uniloy Division*, 86 Ill. App. 3d 1066, 408 N.E.2d 771 (1980); *Woods v. Graham Engineering Corp.*, 183 Ill. App. 3d 337, 539 N.E.2d 316 (1989); *Coleman v. Verson Allsteel Press Co.*, 64 Ill. App. 3d 974, 382 N.E.2d 36 (1978).

The trial court found that the affidavit of the plaintiff's expert confused easy access with easy modification. I agree and would affirm.