600 S.E.2d 315

**STATE of West Virginia ex rel. Greg B. KRIVCHENIA, M.D., and First Settlement Orthopaedics, Inc., Petitioners,**

v.

**The Honorable Mark A. KARL, Judge of the Circuit Court of Wetzel County, and Keith E. Piatt, Individually and as Father, Natural Guardian and Next Friend of Jamison Piatt, an Infant, Respondents.**

No. 31660.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 24, 2004.

Decided March 16, 2004.

---

McGraw, J., dissented.

Patrick S. Casey, Esq., Sharon Bidka Urbanek, Esq., Flaherty, Sensabaugh & Bonasso, Wheeling, West Virginia, Attorneys for Petitioners.

Gregory A. Gellner, Esq., Wheeling, West Virginia, Attorney for Respondents.

## PER CURIAM:

This writ of prohibition was filed by Dr. Greg P. Krivchenia and First Settlement Orthopaedics, Inc., petitioners/defendants below (hereinafter collectively referred to as "Dr. Krivchenia"), seeking to prohibit the enforcement of an order by the Circuit Court of Wetzel County. The circuit court's order prohibited Dr. Krivchenia's medical malpractice expert from testifying that Dr. Krivchenia followed the standard of care in providing medical services to an infant, Jamison Piatt, respondent/plaintiff below (hereinafter referred to as "Mr. Piatt"). After reviewing the briefs and record, and listening to the arguments of the parties, we grant the writ.

## I.

## FACTUAL AND PROCEDURAL HISTORY

On June 21, 1998, Jamison Piatt sustained a fracture of his left arm.[1] The fracture was initially treated by Dr. Naresh Nayak on June 22, 1998. Subsequent to treatment by Dr. Nayak, complications arose and further treatment was deemed necessary. Dr. Krivchenia was consulted for additional treatment.[2] On July 16, 1998, Dr. Krivchenia performed additional surgery on Mr.

Piatt's left arm. A cast was placed on the arm after the surgery.

On July 23, 1998, Mr. Piatt returned to Dr. Krivchenia's office to have x-rays of his arm. Dr. Krivchenia noted that the fracture was healing. On August 11, 1998, Mr. Piatt visited Dr. Krivchenia's office to have the cast removed from his arm. After Dr. Krivchenia removed the cast he noted a deformity in the healing of the fracture. Dr. Krivchenia informed Mr. Piatt's family that the deformity would correct itself over time. The last visit made by Mr. Piatt to Dr. Krivchenia's office was on October 1, 1998. During that visit Dr. Krivchenia again noted the deformity.

About a year after Mr. Piatt's last visit with Dr. Krivchenia, he visited Dr. Eric Jones, a pediatric orthopedic surgeon at West Virginia University. Mr. Piatt visited Dr. Jones because he was experiencing decreased range of motion in his left hand. Dr. Jones determined that Mr. Piatt had developed synostosis between his forearm bones, near the fracture site.[3] It was Dr. Jones' opinion that the synostosis prevented Mr. Piatt from having normal range of motion in his left hand. Dr. Jones offered Mr. Piatt the option of having surgery to correct the deformity in the left arm and to remove the synostosis. Mr. Piatt's family declined to have further surgery.

Subsequent to the consultation with Dr. Jones, the instant action was filed against Dr. Krivchenia and First Settlement Orthopaedics,[4] by Mr. Piatt's father, Keith E. Piatt.[5]

Pursuant to the circuit court's scheduling order, Dr. Krivchenia designated Dr. Stephen A. Mendelson as an expert witness who would render opinions supporting Dr. Krivchenia's care and treatment of Mr. Piatt. On November 5, 2003, Dr. Mendelson was deposed by Mr. Piatt's counsel. During the

---

1. Mr. Piatt was nine years old at the time of this incident.

2. Dr. Krivchenia and Dr. Nayak were both employed with First Settlement Orthopaedics.

3. Synostosis refers to "[t]he fusion of normally separate skeletal bones." The American Heritage Dictionary of the English Language (4th ed.2000).

4. Dr. Nayak was also named as a defendant. The claim against him has been dismissed.

5. Keith E. Piatt filed the action individually and on behalf of his son. The sparse record does not show the exact date that the suit was filed.

deposition Dr. Mendelson testified that he *was not* going to render an opinion on the standard of care used by Dr. Krivchenia:

> Q. Okay. As far as what the standard of care is at that moment [July 23, 1998] you don't know, you don't intend to offer an opinion on that?
>
> A. Again, I think the standard of care is a term that you guys define, it's not a term that we use-I use when I'm practicing medicine.
>
> Q. So then my statement was correct, you're not going to offer an opinion on what the standard of care was on 7/23/98 and whether or not it was met?
>
> A. That's correct.

Based upon Dr. Mendelson's testimony, counsel for Mr. Piatt filed a motion in limine to prohibit Dr. Mendelson from testifying during the trial. By order entered November 26, 2003, the circuit court granted the motion in part as follows:

> Dr. Stephen A. Mendelson, M.D., will be permitted to testify. However, neither he nor counsel will be permitted to argue or elicit testimony from Dr. Mendelson regarding the "standard of care" because his deposition in different areas of questions show he does not know what the standard of care is and ... he will not offer an opinion as to the standard of care on July 23, 1998, or whether or not it was met.

Subsequent to the entry of the order limiting Dr. Mendelson's testimony, Dr. Krivchenia filed a motion for reconsideration. In that motion Dr. Krivchenia attached an affidavit wherein Dr. Mendelson indicated he would render an opinion that Dr. Krivchenia did not deviate from the standard of care. By order entered December 13, 2003, the circuit court denied the motion for reconsideration. Dr. Krivchenia thereafter filed the instant petition for a writ of prohibition seeking to prohibit enforcement of the circuit court's orders preventing Dr. Mendelson from testifying as to the standard of care.

## II.

## STANDARD OF REVIEW

■ We have held that "[p]rohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for [a petition for appeal] or certiorari." Syl. pt. 1, *Crawford v. Taylor*, 138 W.Va. 207, 75 S.E.2d 370 (1953). In this proceeding, Dr. Krivchenia does not claim that the circuit court has no jurisdiction, but rather that it has exceeded its legitimate powers. In this regard, we held in syllabus point 4 of *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996):

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

■ Further, "[w]hether a witness is qualified to state an opinion is a matter which rests within the discretion of the trial court and its ruling on that point will not ordinarily be disturbed unless it clearly appears that its discretion has been abused." Syl. pt. 5, *Overton v. Fields*, 145 W.Va. 797, 117 S.E.2d 598 (1960). *See* Syl. pt. 13, *Foster v. Sakhai*, 210 W.Va. 716, 559 S.E.2d 53 (2001).

## III.

## DISCUSSION

■ Here, this Court must determine whether the circuit court abused its discre-

tion in denying Dr. Krivchenia's motion for reconsideration on the issue of the admissibility of Dr. Mendelson's testimony.[6] This Court has noted that motions for reconsideration of interlocutory orders "do not necessarily fall within any specific ... Rule. They rely on 'the inherent power of the rendering ... court to afford such relief from interlocutory judgments ... as justice requires.'" *State ex rel. Crafton v. Burnside,* 207 W.Va. 74, 77, 528 S.E.2d 768, 771 (2000) (quoting *Greene v. Union Mut. Life Ins. Co. of America,* 764 F.2d 19, 22 (1st Cir.1985)). In the instant proceeding, justice required the circuit court to grant Dr. Krivchenia's motion for reconsideration and permit Dr. Mendelson to render an opinion on the standard of care. A case which helps illustrate this point is *Shane v. Blair,* 139 Idaho 126, 75 P.3d 180 (2003).

In *Shane,* the plaintiff filed a medical malpractice action against the defendant doctor. The plaintiff alleged that the defendant breached the applicable standard of care in operating on his spine. The defendant moved for summary judgment and attached his own affidavit indicating that he had complied with the applicable standard of care. The plaintiff filed a response in opposition and attached the affidavit of his expert, which stated that the defendant failed to meet the applicable standard of care while performing the surgery on the plaintiff. The plaintiff subsequently submitted two more affidavits from his expert to show that his expert was aware of the standard of care requirements of Idaho. The defendant thereafter filed a motion to strike the affidavits of plaintiff's expert because the expert had not sufficiently familiarized himself with

the applicable standard of care. The trial court granted the defendant's motion for summary judgment and motion to strike the affidavits of plaintiff's expert. The trial court's grounds were that the affidavits did not evidence that the expert had familiarized himself with the relevant standard of care.

The plaintiff subsequently filed a motion for reconsideration and submitted a supplemental fourth affidavit from his expert. The supplemental affidavit indicated that the expert obtained actual knowledge of the applicable standard of care by consulting with an orthopedic surgeon from Utah, who had reviewed countless similar cases from Idaho.[7] The defendant objected to the submission of the affidavit. The trial court struck the new affidavit and denied the plaintiff's motion for reconsideration. On appeal, the Idaho Supreme Court reversed. In doing so, the opinion stated that the "fourth affidavit is admissible, as it satisfies the requirement that an out-of-area expert obtain knowledge of the local standard of care by consulting with a doctor familiar with the local standard of care." *Shane,* 75 P.3d at 185. *See also Davis v. Pak–Mor Mfg. Co.,* 284 Ill.App.3d 214, 219 Ill.Dec. 918, 672 N.E.2d 771 (1996) (holding that motion for reconsideration should have been granted because expert clarified his opinion after trial court found his earlier opinion was defective).

In the instant proceeding, Dr. Mendelson stated during his deposition that he did not understand the legal definition of standard of care and, therefore, that he would not render an opinion on the standard of care. However, during the motion for reconsideration, Dr. Mendelson submitted an affidavit indicating

---

**6.** In view of the state of the record when the circuit court granted, in part, Mr. Piatt's motion in limine, we have no hesitancy in upholding that initial ruling. It is clear that when the circuit court entertained the motion in limine in part, the record established that Dr. Mendelson was not going to render an opinion on the standard of care. Dr. Krivchenia correctly notes in his brief that "Rule 703 of the West Virginia Rules of Evidence allows an expert to base his opinion on ... facts or data, admissible in evidence, and presented to the expert at or before trial[.]" Syl. pt. 2, in part, *Mayhorn v. Logan Med. Found.,* 193 W.Va. 42, 454 S.E.2d 87 (1994). However, Rule 703 does not permit an expert to render an opinion during a trial, when the expert expressly

states during a deposition that no opinion would be given. This situation is tantamount to trial by ambush. Under such circumstances "a court can limit the admission of any testimony to prevent unfair prejudice and trial by ambush." *State ex rel. Weirton Med. Ctr. v. Mazzone,* 214 W.Va. 146, 154, 587 S.E.2d 122, 130 (2003). *See McDougal v. McCammon,* 193 W.Va. 229, 237, 455 S.E.2d 788, 796 (1995) ("Trial by ambush is not contemplated by the Rules of Civil Procedure.").

**7.** The plaintiff also submitted an affidavit from the Utah doctor.

that, "I have been advised that standard of care in West Virginia for a physician is 'what a reasonably prudent physician in the same or similar circumstances would do.'"[8] The affidavit stated further that "having been informed of the legal definition of standard of care as it applies to Dr. Krivchenia, I am of the opinion, as I always have been, that Dr. Krivchenia did not deviate from the standard of care in regards to his care and treatment of Jamison Piatt." Finally, the affidavit indicated that Dr. Mendelson had "not yet had an opportunity to submit corrections to [his] deposition."[9]

■ Based upon Dr. Mendelson's affidavit, we believe the circuit court should have granted the motion for reconsideration and permitted Dr. Mendelson to render an opinion on the standard of care.[10] Our cases have made clear that "[g]enerally if a witness has ... qualifications with relation to the matter about which he undertakes to testify he should be permitted to give his opinion." *Lewis v. Mosorjak,* 143 W.Va. 648, 667, 104 S.E.2d 294, 305 (1958). *See generally State ex rel. Weirton Med. Ctr. v. Mazzone,* 214 W.Va. 146, 153, 587 S.E.2d 122, 129 (2002) (granting writ of prohibition to preclude enforcement of trial court order barring defendants' medical expert from testifying on standard of care); *Pleasants v. Alliance Corp.,* 209 W.Va. 39, 51, 543 S.E.2d 320, 332 (2000) (affirming trial court's decision to allow defendant's medical expert to testify on standard of care).

Mr. Piatt cited to several cases in his brief which he contends support the circuit court's ruling. We have reviewed the cases cited and find all of them to be distinguishable. For example, Mr. Piatt contends that the decision in *Kiser v. Caudill,* 210 W.Va. 191, 557 S.E.2d 245 (2001) (per curiam), "is similar to the current case[.]" In *Kiser,* the trial court prohibited the plaintiff's medical expert from testifying on the standard of care required by a neurosurgeon. This Court affirmed the trial court's decision on that issue. In doing so, we relied upon the following facts:

> During his deposition [the expert] stated that he did not plan to testify about the standard of care required of a neurosurgeon in this case. He also stated that he was merely an expert in referring patients to neurosurgeons, but he did not hold himself out to be an expert in the field of neurosurgery.... In addition, at trial, during cross-examination by the [defendant] regarding his qualifications, [the expert] acknowledged that he was not qualified or trained in the field of neurosurgery and was not familiar with the manner in which neurosurgical procedures are performed. Given [the expert's] own admissions about his limited knowledge of neurosurgery, we do not find that the circuit court erred by limiting his testimony at trial to the field of neurology.

*Kiser,* 210 W.Va. at 196, 557 S.E.2d at 250. *Kiser* is not on point. In the instant case, the circuit court did not find that Dr. Mendelson was not qualified as an expert in the relevant area of pediatric orthopedic surgery. The circuit court based its decision upon Dr. Mendelson's statement that he would not render an opinion on the standard of care.[11]

---

8. The affidavit pointed out that Dr. Mendelson was licensed to practice medicine in Pennsylvania.

9. Dr. Krivchenia's brief points out that the trial court granted the motion in limine before the period expired for adding corrections to the deposition. *See* W. Va. R. Civ. P. Rule 30(e) ("If requested by the deponent or a party before completion of the deposition, the deponent shall have 30 days after being notified by the officer that the transcript or recording is available in which to review the transcript or recording and, if there are changes in form or substance, to sign a statement reciting such changes and the reasons given by the deponent for making them....").

10. We should point out that the issue presented in this case would never have surfaced had Dr. Krivchenia's counsel taken the simple step of explaining to Dr. Mendelson the meaning of standard of care in West Virginia. This could have been done before or during the deposition.

11. Mr. Piatt also cited, as being on point, to the decisions in *State ex rel. State Farm Fire & Casualty Co. v. Madden,* 192 W.Va. 155, 451 S.E.2d 721 (1994), and *Sheely v. Pinion,* 200 W.Va. 472, 490 S.E.2d 291 (1997) (per curiam). In *Madden,* we held "that the circuit court was acting within his discretion ... by refusing to allow [defendant] to designate experts after the expiration of the deadlines established in the scheduling order." *Madden,* 192 W.Va. at 161, 451 S.E.2d at

## IV.

### CONCLUSION

We grant the writ of prohibition. The circuit court's orders precluding Dr. Mendelson from testifying on the standard of care are vacated.

Writ granted.

Justice McGRAW dissents.

727. In *Sheely*, we affirmed the trial court's preclusion of plaintiff's expert "as a sanction for failing to comply with the expert disclosure deadline in the scheduling order." *Sheely*, 200 W.Va. at 477, 490 S.E.2d at 296. *Madden* and *Sheely* are clearly not on point. In the instant proceeding, the circuit court did not limit Dr. Mendelson's testimony on the grounds that Dr. Krivchenia failed to timely designate him as an expert.