LAZARDO MATA, Plaintiff-Appellee, *v.* CLARK EQUIPMENT COMPANY, Defendant-Appellant and Third-Party Plaintiff-Appellee.—(ROBERT A. BERNER & COMPANY, d/b/a Vegetable Packing House, Third-Party Defendant-Appellant.)

First District (2nd Division)   No. 76-1667

Opinion filed March 7, 1978.

French and Rogers, of Chicago (Richard G. French and Michael C. Kominiarek, of counsel), for appellant Clark Equipment Company.

Sweeney and Riman, Ltd., of Chicago (Elliot R. Schiff, of counsel), for appellant Robert A. Berner & Company.

Reed, Lucas & Doherty, of Chicago (Scoby, Biggam & Lunding, P. C., of counsel), for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Plaintiff, Lazaro Mata (Mata) commenced this action for strict liability in tort against Clark Equipment Company (Clark) for injuries he sustained while operating a Clark forklift truck at the Vegetable Packing House (packing house) in Chicago on November 22, 1971. Clark commenced a third-party proceeding (Ill. Rev. Stat. 1975, ch. 110, par. 25) for indemnity against the owner of the packing house, Robert A. Berner & Company (Berner). Following a jury trial, at which Clark presented no evidence, the jury awarded Mata $154,100 in damages. Clark's motions for directed verdict at the close of the plaintiff's case and at the close of all the evidence were both denied. The trial court entered judgment for that amount. The trial court also granted Clark's motion for a directed verdict in its third-party indemnity action against Berner.

Both Clark and Berner have appealed. Clark maintains it is not liable to Mata and has raised numerous theories in urging a reversal: assumption of the risk, failure to prove that the forklift truck was in an unreasonably dangerous condition, that it was under no duty to guard against the injury

to Mata because it was not reasonably foreseeable, and failure to properly instruct the jury.

Mata's complaint, filed on January 15, 1973, alleged that he was injured as the proximate result of an unreasonably dangerous design defect in the forklift truck designed and manufactured by Clark, and that the defect existed at the time the truck left Clark's control. The complaint sought $750,000 to compensate Mata for his medical bills, lost wages, permanent disfigurement, and pain and suffering. In his amended complaint, filed on February 17, 1976, Mata added a second count seeking punitive and exemplary damages of $500,000 for Clark's wilful and wanton misconduct in permitting a known danger in the design of the forklift truck to continue to exist. In the alternative, count II alleged that Clark's conduct was in reckless disregard of the consequences. Clark's answer denied the material allegations of the amended complaint and raised the affirmative defense of assumption of risk.

The relevant facts are:

Clark leased a forklift truck to Berner for use in its packing house during its busy fall season. The leased truck was delivered to the packing house by Clark employees and was received by Berner's shipping clerk, Ernie Garber. At the time the truck was delivered, Garber signed a form document entitled "RENTAL AGREEMENT." On the reverse side of this document, entitled "Rental Terms and Conditions" is a paragraph which states in broad language that the lessee agrees to indemnify the lessor for all damages, claims, penalties, liabilities, *et cetera*, "howsoever arising or incurred because of the Equipment * * * or operation thereof."

Mata, a seasonal employee of the packing house for approximately four years, was operating the rented forklift truck on the date of the injury, November 22, 1971. At that time Mata had been operating forklift trucks since 1957. During the morning of that day he and his co-workers unloaded a shipment of walnuts in 100-pound plastic sacks.

The walnuts were unloaded in the following manner: Some of the workers would stack the bags of nuts on wooden pallets, nine bags to a pallet. Mata, using the rented forklift, would then transport the pallets to an area just outside the entrance to the warehouse. The forklift, equipped with a protective overhead guard to prevent falling objects from hitting the operator, was too high to fit through the entrance to the packing house with the protective guard in place. Thus, Mata would place the loaded pallets outside the door, where they would be taken into the packing house by another man operating a forklift capable of passing through the door. Inside the warehouse, the pallets of walnuts were stacked four-high, a total of approximately 12 feet per stack. Mata testified that the sacks, made of a plastic material, were slippery, and that he and his co-workers

experienced difficulty all day long with bags falling off the pallets. The bags were not in any way secured to the wooden pallets.

Late in the day, it was determined that the walnut shipment was unsatisfactory to Berner and would have to be returned. Mata and his co-workers commenced to reload the bags onto the trailers.

This time, because they were in a hurry, Mata retracted the protective overhead guard so that he could pass through the door into the packing house. Mata would then pick up two pallets of walnuts from inside the warehouse and transport them directly to the area where they would be reloaded onto the trailers. The forklift truck was designed to permit retraction of the overhead guard with ease, as the need arose.

On one of his trips Mata approached one of the 12-foot stacks located next to the warehouse wall. He raised the forks on the lift approximately six feet off the floor to obtain the top two pallets. He lifted the pallets and began to back out, when some of the bags began to slip. One bag fell off the pallet, struck Mata on the forearm, and then became wedged between the wall and the right-hand side of the lift truck. The bag came to rest on the lever that controls the up and down motion of the forks. Plaintiff stopped the truck and attempted to remove the bag. Mata gave conflicting testimony as to whether he turned off the ignition switch before attempting to remove the bag. He stood up on the seat and began to lift the bag, when he lost his balance and began to fall backwards. He reached out to grab a metal tie-bar connecting the two upright posts containing the mechanism for lifting and lowering the forks. As he did so, the bag moved against the control so that the forks began to descend. Another tie-bar, located between the two extensions of the upright posts, began to descend with the forks. This second tie-bar was designed to pass within three-eighths inch of the bar Mata was grasping, creating what mechanical engineers refer to as a "sheer point." As the forks descended, Mata's left hand was caught in this sheer point and crushed between the two bars. His hand was also crushed when a "resting pad" located on the top of the descending tie-bar, came to rest on the top of the stationary bar, bearing the entire weight of the 1,800 pound load. Mata's left index finger was amputated, and he lost the functional use of most of his left arm.

I.

■■ In *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182, it was held that to recover under a theory of strict product liability, a plaintiff must prove that his injury or damage resulted from a condition of the product, that the condition was an unreasonably dangerous one, and that the condition existed at the time it left the manufacturer's control. (32 Ill. 2d 612, 623.) A manufacturer has a duty to make a product reasonably fit for its intended use. (*Winnett v. Winnett* (1974), 57 Ill. 2d 7, 9-10, 310

N.E.2d 1.) However, it has been consistently held that the doctrine of strict liability in tort does not make a manufacturer an insurer of the consumer's safety. The doctrine is one of liability without negligence, but it is not liability without fault. See *Zoerner v. Eisner Grocery Co.* (4th Dist. 1969), 111 Ill. App. 2d 342, 344, 250 N.E.2d 156, *appeal denied*, 42 Ill. 2d 584 (1970); *Larson v. Thomashow* (1st Dist. 1974), 17 Ill. App. 3d 208, 223-24, 307 N.E.2d 707.

■■ Every product need not be accident proof, incapable of causing harm or accompanied by a warning against injury which may ensue from a mishap in its use. (*Jonesque v. Jewel Home Shopping Service* (2d Dist. 1973), 16 Ill. App. 3d 339, 345, 306 N.E.2d 312.) The liability of a manufacturer properly encompasses only those situations where the product is being used for the purpose for which it was intended or for which it is reasonably foreseeable that it may be used. (*Winnett v. Winnett*, 57 Ill. 2d 7, 11.) In retrospect, almost nothing is entirely unforeseeable. A test of foreseeability, however, does not bring within the scope of a defendant's liability every injury that might possibly occur. Foreseeability has been defined by our supreme court in *Winnett* as that which is *objectively reasonable* to expect, not merely what might conceivably occur. (57 Ill. 2d 7, 12.) In *Dunham v. Vaughan & Bushnell Mfg. Co.* (4th Dist. 1967), 86 Ill. App. 2d 315, 229 N.E.2d 684, it was stated:

"[T]he question of what constitutes an ordinary use is clearly a question of fact and * * * the foreseeability of careless use is a matter for a jury, unless the use of the product was, in fact, so unintended and unforeseeable that the case should be taken from the jury." 86 Ill. App. 2d 315, 330.

■■ We believe that Mata's use of the forklift truck at the time of his injury was so unintended and unforeseeable that the trial judge should have taken the case from the jury. Foreseeability may be decided as a matter of law where the facts demonstrate that plaintiff could never be entitled to recovery. *Winnett v. Winnett*, 57 Ill. 2d 7, 13; *Doran v. Pullman Standard Car Manufacturing Co.* (1st Dist. 1977), 45 Ill. App. 3d 981, 987, 360 N.E.2d 440.

The evidence showed that at the time he was injured, Mata, a forklift operator with 17 years experience, was operating the forklift truck in question without the benefit of the protective overhead guard which had been installed by Clark. When the bag of nuts fell and became wedged between the truck and the wall, Mata stood up on the seat (an act he would not have been able to accomplish had the overhead guard been in place) while the truck was still in operation, and attempted to remove it. He then lost his balance, grasped the stationary tie-bar, and was injured. It

must be obvious that Mata knew the operational features of the forklift and the dangers that were present in its operation.

By the evidence Mata presented at trial, it is obvious that Clark could not reasonably have objectively foreseen the use made of the forklift truck at the time of his injury. Under these circumstances, in order to sustain his burden of proving that the product was in an unreasonably dangerous condition, Mata should have introduced some evidence that such a use was reasonably foreseeable by Clark. Having failed to do so, the trial court should have granted Clark's motion for a directed verdict after Mata had completed the presentation of his case. (See *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) In our opinion plaintiff did not meet the three-point test established in *Suvada*.

## II.

Having concluded that the plaintiff's evidence was insufficient to allow the case to go to the jury, there is no need to address either the other issues raised by Clark or the issues raised by the third-party action.

For the above reasons, the judgment entered on the jury's verdict in favor of the plaintiff, Lazaro Mata, is reversed, as is the judgment against Robert A. Berner & Company, d/b/a Vegetable Packing House.

Reversed.

STAMOS, P. J., and PERLIN, J., concur.