KENNEDY, Judge (concurring in part, dissenting in part). {38} NCR’s unaltered design of the 22-year-old crushing plant would have prevented Chairez’s injury. The alteration critical to causing the injury — removing the plate steel “shield” separating the feed hopper of the crusher from the area where the flywheels rotated — serves no purpose that has been described in the evidence (or by the majority). Second, by emphasizing the foreseeability of the alterations, the majority has deemphasized the other required element for imposing strict liability — whether the product’s use was foreseeable. I would affirm the district court’s order granting summary judgment to NCR. If we look at the facts in an objective and reasonable manner as required by the law, there is simply no genuine issue of material fact concerning whether NCR could have reasonably foreseen either the critical modifications which caused Chairez’s injuries or the risk that would be caused by those modifications in conjunction with Chairez’s own unreasonable use of the rock crusher. To ask such foresight of a manufacturer defies reason and is the functional equivalent of requiring the use of a crystal ball. Momentarily casting discussion of necromancy aside, both the undisputed facts of this case and our case law demand we affirm. The Facts: An Introduction {39} No dispute exists that NCR constructed and delivered a portable rock crushing plant that had a complete platform over the feed box, and was not designed to have persons in the area of the crushing mechanism when the plant was operating. No dispute exists over the fact that Chairez was trained not to enter the crushing mechanism when the machine was operating. Someone other than NCR made three modifications of note between the plant’s sale and delivery by NCR in 1981 and the accident in 2003: (a) the solid platform above the hopper had been modified by cutting out part of it and replacing it with a hinged/sliding piece to facilitate entry into the hopper; (b) a step that ran the roughly 4-foot width of the hopper extending about 10.5 inches into the hopper was added some 17 inches below the hopper’s rim; and (c) metal plating between the hopper and an area behind it that contained two gigantic flywheels that provided power to the crushing mechanism was removed, exposing the flywheels within inches of either end of that step. {40} Evidence shows that rocks sometimes jammed in the crusher, requiring action by operators to move or remove them to permit further operation and that NCR knew that. Mr. Randolph, whose testimony the majority mentions in stating that workers tried to clear jams when the plant was operating, specifically testified that workers “never” went into the hopper, but stood on the top platform to try to clear jams. Michael Ward, another worker present at the time of the accident, said he had never before seen anyone try to unblock a jam when the machine was running. Modifications (a) and (b) above specifically facilitate that process. No evidence explains the removal of the barrier between the back of the step and the flywheels. Chairez’s training specifically directed him never to enter the feed hopper when the plant was running. At least one of Chairez’s fellow employees told him to come up out of the machine immediately prior to his injury. No one testified that they ever expected him to go down into the machine when it was running until he had done it. The Law: An Introduction {41} This Court has previously held that a manufacturer is liable only to “those individuals to whom injury from a defective product may reasonably be foreseen and only those situations where the product is being used for the purpose for which it was intended or for which it was reasonably foreseeable it [would] ... be used.” Van de Valde, 106 N.M. at 459-60, 744 P.2d at 932-33 (emphasis added) (internal quotation marks and citation omitted). These precepts are codified in UJI 13-1402 NMRA, which provides that “[t]he supplier of a product has a duty to use ordinary care to avoid a foreseeable risk of injury caused by a condition of the product or manner in which it is used.” This duty continues after the product has left the supplier’s possession, and thus “[a] supplier who later learns, or in the exercise of ordinary care should know, of a risk of injury caused by a condition of the product or manner in which it could be used[,] must then use ordinary care to avoid the risk.” Id. This duty is in turn limited by UJI 13-1403 NMRA, which states that although a supplier has the duty to consider foreseeable risks of injury, “[w]here an injury is caused by a [risk] [or] [misuse of the product] which was not reasonably foreseeable to the supplier, ... [the supplier] is not liable.” To impose liability, then, requires a manufacturer to foresee the risk of injury from the condition of the product, including likely modifications, and the risk of injury that attends foreseeable uses or misuses of the product. Both parties cite UJI 13-1422 NMRA, which discusses product modification. That instruction states: In order for a supplier [a particular supplier who was in the chain of marketing the product] to be liable, the injury must have been caused by a condition of the product which was not substantially changed from the condition in which the [particular] supplier placed the product on the market or in which the supplier could have reasonably expected it to be used. For substantial change in the product to relieve a supplier of liability, the change itself must be a cause of the harm done. {42} This statement of New Mexico law[1] appears to significantly limit a manufacturer’s exposure to liability when substantial changes to the product cause the risk of harm. It distinguishes between the condition of the product as sold and the condition in which the manufacturer could reasonably expect it to be used, including any reasonably anticipated modifications to it. The next question therefore becomes whether, if the condition of the product has been substantially changed, the manufacturer could have reasonably expected its product to have been used in the way that caused the injury. “Misuse is use of a product for a purpose neither intended nor foreseeable by the manufacturer or supplier.” Austin v. Lincoln Equip. Assocs., Inc., 888 F.2d 934, 938 (1st Cir.1989). This Court has previously recognized that some uses are “so unforeseeable that the matter can be taken [away] from the jury.” Smith, 2001-NMCA-090, ¶17, 131 N.M. 87, 33 P.3d 638. Modified Products Require a Different Analysis {43} Thus, imposing liability on a manufacturer for a product modified after its sale involves three assessments. First, the modification or alteration must have been foreseeable to the manufacturer; second, the produet, as modified, must have been likely to cause harm; and third, the particular harmful use of the modified product must have been foreseeable as well. The parties agree that NCR had nothing to do with the modifications themselves.[2] It is also beyond dispute that but for these modifications, particularly opening access to the flywheels, Chairez would not have been injured. {44} The majority attempts to raise the bar to require the modification to be the “sole proximate cause” of the injury, Majority Opinion ¶ 12, but even with the bar set this high, it is plain that but for exposing the flywheels by removing the plate steel barrier separating them from the hopper, Chairez would not have been exposed to the agent of his injury. Again, however, foreseeability of that modification and its role in causation, must also exist with a use of the product that was foreseeable to NCR. The majority implies that Chairez’s use of the machine was foreseeable; I believe otherwise enough to be comfortable saying it was unforeseeable as a matter of law. {45} In this case, removing rock jams from the vantage of the upper platform was both foreseeable and common. The removal of the barrier to the flywheels was not related to the crusher’s intended use. It was, along with Chairez’s own unreasonable conduct, the cause of his injury. {46} The majority, despite having viewed “the photographic evidence” through their crystal, confess that it is unclear why the metal barrier was removed. The record itself offers no explanation. Majority Opinion ¶ 17. Without an objectively discernable reason for a modification of the product and a further inability to divine the reason for the modification on the part of the end-user, applying the majority’s analytical standard negates foreseeability entirely and allows a determination of the issue as a matter of law. The majority reasonably adopt the Plaintiffs argument below — that adding the step might invite stepping on it but NCR did not add the step, and no evidence suggests that removal of the shield between the step, and the crusher’s largest moving parts was ever foreseeable. Had the shield been in place, not only would Chairez’s leg not have been in a place to be broken, but any use of the narrow step while the crusher was running would have been far more difficult. Thus, foreseeing use of the step by a worker down on all fours removing rocks from the hopper by hand— and therefore placing his legs in an area of great danger while the plant is operating— approaches objective inconceivability. To hold otherwise would be to require manufacturers to design products for irrational and unreasonable end users, and our laws are not designed to protect the irrational and unreasonable from their own artifice. Indeed, this Court has held that manufacturers are not the “insurers of any and all risks attendant to the use of their product.” Van de Valde, 106 N.M. at 459, 744 P.2d at 932. The district court ruled correctly. Chairez’s “Use” of the Crusher {47} But absent foresight of the modification itself, we should consider the use of the crusher in this case. Chairez climbed up two ladders and over a guardrail with two barrier chains to the top platform, on which he opened a hatch. He then climbed through the hatch to occupy the 10-inch wide ledge below it, and got down on all fours on this narrow ledge in an attempt to knock rocks by hand out of the powered and moving jaws below him. As he did this, he necessarily extended his leg behind him, through the opening left by removing the “shield,” toward an enormous wheel that was, in turn, spun by a 325-horsepower engine, until the wheel caught his foot and broke his leg. The photographic evidence shows no gap from the edge of the ledge to the edge of the wheel. Saying that this use was foreseeable seems to consist of creating a simplistic and false legal inference that: (a) where a machine incorporates large and dangerous moving parts, (b) some user will inevitably modify it in order to more easily insert body parts into one of its most powerful and dangerous areas when it is running. One is not required to “guard against eventualities which at best are too remote to be reasonably foreseeable.” Noebel v. Hous. Auth. of City of New Haven, 146 Conn. 197, 148 A.2d 766, 769 (1959). For us, foreseeability must involve the reasonable limits of foresight, not the untrammeled application of hindsight. {48} Clearing rock jams when the machine is running happens, but only from the top platform. Clearing jams from inside the feed hopper when the crusher is running was unknown. Either way, clearing jams is not shown by the evidence to have anything to do with exposing the flywheels. An inference that removing the “shield” was a foreseeable modification in 1981 and that exposing one’s self to the flywheels when they were moving was a foreseeable use in 2003 employs only the foreseeability of hindsight. The majority illogically give equal weight to Plaintiffs generalized view that jams are common and might need to be cleared with the help of alterations to the machine and NCR’s more specific view that it was unreasonable to anticipate a modification to the machine so as to allow easier access to the flywheels when the machine was running. Majority Opinion, ¶ 19. These propositions are not of equal weight. NCR should not anticipate exposure of workers to spinning flywheels without a showing that there was a reason to do so. While it might reasonably expect that jams need to be cleared, modifications that facilitate the process while the machine is running and expose workers to moving parts is beyond the limits of reasonable anticipation. Misuse of the plant by climbing into a place made even more dangerous by another’s modification and yet more so when the plant was still running is something an objective observer could fairly regard as inconceivable. Van de Valde and the Voice of Objective Reasonableness {49} Against this miasma of supposition rests our decision in Van de Valde, which provides an instructive framework for this case. The plaintiff there was injured after he secured objects to the roof of a Volvo with a strap from the ear that was designed only to secure the vehicle’s spare tire inside the tire well. Van de Valde, 106 N.M. at 457, 744 P.2d at 930. He sought damages against the manufacturer, among other defendants, and argued that it was foreseeable that operators would use such straps to secure not only the tire inside the tire well, but also to secure other items to the roof of the car. The district court granted summary judgment to the manufacturer on the basis that such a use was not foreseeable. Plaintiff then appealed to this Court. Id. at 457-58, 744 P.2d at 930-31. This Court affirmed the order of summary judgment, holding that the use of the tire strap to secure objects to the top of the car was not “objectively foreseeable.” Id. at 459-60, 744 P.2d at 932-33. Van de Valde asked, “[wjhile it is conceivable that plaintiff ... might use the tire restraining strap to stretch across a surface wider than the strap itself, would it not be just as conceivable that someone might attempt to use it to lower a thousand-pound motor into a truck?” Id. at 459, 744 P.2d at 932. Either way, the opinion held, the strap would fail. This Court concluded that to expand foreseeability to extreme uses outside a product’s common function and design went too far. The analysis comes down, not to whether the use was simply foreseeable, but to whether the use was “objectively foreseeable.” Id. {50} In reaching the holding in Van de Valde, this Court adopted the opinion of the Illinois Court of Appeals in Mata v. Clark Equipment Co., 58 Ill.App.3d 418, 15 Ill.Dec. 980, 374 N.E.2d 763 (1978), which parallels the issues in this case. In Mata, a warehouse employee was injured when he stood up on a forklift to dislodge a bag of walnuts stuck between the forklift and a wall while the truck was still in motion. The bag fell on him and injured him. The employee was able to stand up on the forklift only because the forklift’s overhead protective guard, designed and installed by the manufacturer, had been removed by his employer. Van de Valde, 106 N.M. at 458-59, 744 P.2d at 931-32. This court adopted the holding of the Illinois court which affirmed an order of summary judgment for the manufacturer, because although removal of the forklift’s overhead cover was certainly foreseeable, it was not “objectively reasonable.” Id. In so holding, the Mata court stated, “almost nothing is entirely unforeseeable. A test of foreseeability, however, does not bring within the scope of a defendant’s liability every injury that might possibly occur.” Id. at 459, 744 P.2d at 932 (internal quotation marks and citation omitted). We should not depart from Mata or Van de Valde today. Foreseeability is “that which is objectively reasonable to expect, not merely what might conceivably occur.” Id. (emphasis, internal quotation marks and citation omitted); see Smith, 2001-NMCA-090, ¶ 17, 131 N.M. 87, 33 P.3d 638 (holding foreseeability was properly a jury question where the record showed that an intentionally designed characteristic of a pistol was a contributing cause of plaintiffs injury and that plaintiffs dangerous use was therefore objectively foreseeable). {51} Objectivity is the key. As Judge Aland urged in Madsen v. Scott, 1998-NMCA-092, ¶ 42, 125 N.M. 475, 963 P.2d 552 (Alarid, J., dissenting), “the ‘foreseeability’ element of proximate cause is established by proof that actor, as [a] person of ordinary intelligence and prudence, should reasonably have anticipated [the] danger to others created by his negligent act. That which is objectively reasonable to expect, not merely what might conceivably occur.” (emphasis added) (citation omitted), rev’d 1999-NMSC-042, ¶ 18,128 N.M. 255, 992 P.2d 268. {52} In the instant case, for example, we might ask whether it was objectively reasonable to expect that someone would remove the steel barrier between the rock crusher’s hopper and flywheels. There is no dispute that NCR designed the barrier to prevent exposure of the flywheels while they continued to turn. I do not view the removal of such a barrier as foreseeable and believe that such a removal cannot be said to qualify as objectively reasonable, as required by the holding in Van de Valde. Similarly, it might be foreseeable that users would construct a ledge or step to enable workers’ closer access to jammed material; but it does not seem prudent to require NCR to foresee such a use while the flywheels continue to spin and the crusher operates, especially in view of the narrowness of the after-market step and especially after the flywheels have been completely exposed. {53} The last requirement I wish to discuss from Van de Valde is the application of strict liability in “only those” instances where the product is used for the purpose it was intended. I would maintain that Chairez’s use went far beyond the pale of intended use of the rock crusher, just as removing the “shield” went beyond the pale of foreseeable modification of it. Facilitating one reasonable use (clearing jams) is not cause for buying wholesale into all possible uses (climbing into a gigantic running machine next to huge moving parts to clear jams against all manufacturer’s and co-workers’ warnings, industry and company practices, training, and all common sense). Chairez was schooled and experienced in the operation of this rock crusher. He climbed onto a narrow ledge that was open on one side to the crushing jaws of the machine, and on the other, toward two moving wheels of great size and weight. He was an experienced operator exposing himself to an obvious and visible hazard, and as he knelt on the 10-inch wide ledge, had to have a sense as to what a sizeable portion of his lower leg, including his foot, was extending toward. I believe that the law would fairly deem Chairez to know of the dangers attendant to his actions. See, e.g., Mata, 15 Ill.Dec. 980, 374 N.E.2d at 767 (holding that an experienced forklift operator was injured while standing on the seat of a moving forklift modified by removing the overhead guard and was aware of the danger that was unforeseeable as a matter of law to the manufacturer). {54} As the majority now requires manufacturers to foresee such inherently dangerous and unreasonable uses, they require NCR to foresee an employee’s attempt to manually remove jammed material from down in the hopper while the crushers continue to bind, sputter, and choke under the tension of a jam. NCR had never heard of it. Hamilton’s two workers, both familiar with clearing jams, had never seen such a maneuver until Chairez attempted it. Their daily use of the crusher did not allow them to foresee Chairez’s use of it. It is unreasonable to expect NCR, building the crusher twenty-two years prior to the accident, to do so now. Hamilton’s Delgado Liability {55} An employer’s modifications to machinery or operational practices can be accomplished with sufficient wilfulness or recklessness so as to trigger employer tort liability outside the Workers’ Compensation Act. See, e.g., Mull v. Zeta Consumer Prod., 176 N.J. 385, 823 A.2d 782, 786, 787 (2003) (Zizzali, J., concurring) (noting that alterations to machinery that substantially increase certainty of injury may allow for imposing tort liability; arguing that such modifications may create rebuttable presumptions that risk was known, or support per se intentional tort). We do not know who modified the crusher, and there is no need here to address whether using an obviously dangerous machine would trigger liability under Delgado. Despite the removal of the barrier blocking off the flywheels, because Chairez’s actions in the face of known procedures and dangers constituted the greatest proximate cause of his injuries, I agree with the majority that the case here against Hamilton does not rise to New Mexico’s Delgado standard as a matter of law. Hamilton’s liability thus goes no further than its exposure under the Worker’s Compensation Act, and the summary judgment granted to Hamilton is properly affirmed here. {56} The majority’s explosion of a reasonable view of foreseeability into cosmic ether removes the requirement that we apply an objective standard to judge whether foreseeing both particular modifications to a product and its subsequent use. By doing so, the majority unfortunately eliminates this Court’s previous holding in Van de Valde which, if properly applied here, would produce the opposite result. {57} Viewing the district court’s grant of summary judgment as a valid statement that foreseeability is not a reasonable, disputable material fact in this case, I respectfully dissent from that portion of the opinion reversing the order of summary judgment in favor of NCR. . See State v. Wilson, 116 N.M. 793, 795-96, 867 P.2d 1175, 1177-78 (1994) (holding that adoption of a uniform jury instruction by the New Mexico Supreme Court establishes a presumption that instruction is a correct statement of law). . For purposes of context, at the edge of either side of the hole created by the removal of the solid metal "shield” turned a flywheel about 6-feet in diameter, judging by photographs in evidence. A flywheel is an energy storage device for rotational energy — think about how long a toy gyroscope spins with one pull of its string— that can release steady energy to do work. After shutting down the motor on this machine, the wheels would spin for another five minutes; this is the period during which Chairez's leg was broken. These flywheels provide constant power to the jaws of the crusher. The ledge built in front of the hole in which these wheels turned was little more than a hand’s breadth wide and 4 feet long. Nothing obstructed the space between the end of the platform and the moving flywheel; the platform’s edge was entirely within the circumference of the wheel. Chairez knelt on the ledge leaning into the crusher feed box; where was the other half of his leg and foot?